USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/14/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOHN ARUNGWA,

                              Plaintiff,

              -against-

MEGHAN J. BRENNAN, *in her official capacity as Postmaster General of the United States Postal Service*, and PATRICK R. DONAHOE, *in his official capacity as the 2013 Postmaster General*,

                             Defendants.
-----------------------------------------------------------------X

1:17-cv-9586-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, District Judge:

John Arungwa ("Plaintiff"), a former United States Postal worker, brought this suit under Title VII, 42 U.S.C. §§ 2000e *et seq*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, seeking damages for unlawful discrimination at the workplace and retaliation. But he never filed a formal complaint in order to exhaust his administrative remedies prior to doing so—despite the fact that he is represented by counsel. Plaintiff's counsel has admitted that Plaintiff did not exhaust his administrative remedies but argues that his failure to do so is excused by, among other things, the doctrines of equitable tolling and relation back. Because neither of those doctrines excuses Plaintiff's failure to exhaust his administrative remedies, Defendants' motion for summary judgment to dismiss the complaint because of Plaintiff's failure to exhaust his administrative remedies is granted.

I.     BACKGROUND

Plaintiff is an African-American man who began working for the United States Postal Service (the "USPS") in 2001. Compl. ¶ 3, 8. On May 18, 2012, Plaintiff commenced an informal Equal Employment Opportunity ("EEO") pre-complaint by contacting an EEO counselor at the

USPS. Decl. of Richard Feuerstein, May 25, 2018 ("Feuerstein Decl.") (ECF No. 32), Ex. A (ECF No. 32-1). Plaintiff's EEO pre-complaint alleged "unfair treatment at [the] workplace." Aff. of John Arungwa, June 25, 2018, ("Pl.'s Aff.") (ECF No. 34-1) ¶ 9.

Plaintiff engaged in mediation to resolve his pre-complaint, and eventually executed a settlement with the USPS on July 17, 2012. Feuerstein Decl., Ex. B (ECF. No. 32-1) (the "Settlement Agreement"). The Settlement Agreement stated that "[t]his agreement constitutes a full and final settlement of all issues arising out of the following EEO complaint number(s) and by signing this agreement the counselee withdraws and all pending EEPO complaints and appeals relative to the subject matter of these complaints." Settlement Agreement at 1; *see* Pl.'s Aff. ¶ 11 ("I attended the conference, and the conference resulted in a settlement agreement where the mediator wrote out the terms of the agreement. What I wanted was to be treated fairly and *I was ready to give up my claims to have peace*.") (emphasis added).

According to the complaint, on or about December 12, 2012, Plaintiff's employment was terminated when the USPS determined that he was "in violation of various sections of the [USPS's] Employee and Labor Relations Manual that deal with fraud, false statements, and maintaining moral character." Compl. ¶ 17. Plaintiff alleges, however, that he has "not violated any rule nor behaved in any inappropriate manner at any time during his almost twelve years of loyal and committed employment with" the USPS, and that he never acted inappropriately while on the job. Compl. ¶ 15. He states that he is a member of a protected class due to his race and disability, and that "[o]ther employees of Defendant who were not black and/or disabled were not treated in the same manner." Compl. ¶ 18. He claims that he was the victim of retaliation, asserting that much of the

negative treatment he endured at work, including his ultimate termination, was retaliation for his complaints regarding alleged harassment by his manager.[1]  *See* Compl. ¶ 3.

**A. Procedural History**

On December 6, 2017 Plaintiff filed his complaint.  On May 7, 2018 Defendants requested a pre-motion conference to discuss their anticipated motion to dismiss.  (ECF. No. 21).  That same day Defendants submitted a letter motion requesting a stay of discovery pending their anticipated motion to dismiss, in which they noted that Plaintiff had consented to the stay of discovery.  Defendants' lttr., May 7, 2018 (ECF. No. 22).  The Court scheduled a teleconference to discuss the anticipated motion, as well as the motion to stay discovery, which was held on May 11, 2018.  (ECF Nos. 23-25).

At that conference, counsel for Plaintiff conceded that Plaintiff had "failed to exhaust [his administrative] remedies."  May 11, 2018 Tr. (ECF No. 28) at 4:3-6.  Counsel for Plaintiff advanced arguments that his client's failure to take any steps to exhaust his administrative remedies was warranted because Plaintiff purportedly suffered from an unspecified mental disability and accordingly should benefit from equitable tolling.  *Id.* at 3:14-4:6.[2]  This line of argument promoted the Court to inquire:

> [A]s I understand it, you have taken no steps to exhaust on behalf of your client.  What is your view of the law with respect to this issue?  This is not a case in which there is a late EEO filing, but you appear to be taking the position that because he has this [mental] difficulty he need take zero steps in order to exhaust.  What law do you expect to point me to in order to support that position?

---

[1] Plaintiff alleges he has a mental disability, which was specified, for the first time, as "Avoidant Personality Disorder" in Plaintiff's November 11, 2018 supplemental opposition.  Pl.'s Supp. Opp. at 4-5 (ECF No. 38).  No evidence regarding the nature or impact of this alleged mental disability has been submitted.

[2] May 11, 2018 Tr. at 7:21-8:5 ("I am not claiming my client is right. I am claiming my client is disabled and could not exercise his rights.  When I came into this, I don't know that the – I believe that the exhaustion of remedies was not the key here even though technically obviously I agree with you, your Honor, that after the exhaustion of remedies, I believe what I needed was I needed a way to come back to this and to end up with counsel on the other side saying, There is something so wrong with the whole procedure that there has to be a higher-up who can step in and help out.").

*Id.* at 5:9-17.

Pointing to no legal precedent, counsel for Plaintiff argued that his client's failure to exhaust his administrative remedies was excused because "in this particular instance that there -- an exhaustion was warranted simply because my client has not had the ability to present his arguments," *Id.* at 6:7-10, and because "there was something that was drastically wrong with the [grievance] process," in that the USPS did not comply with an unspecified 45-day rule. *Id.* at 7:7-15.[3]

The Court then established a briefing schedule for the motion. The Court granted the Defendants' request to stay discovery pending the resolution of Defendants' motion. As noted above, Plaintiff had previously consented to Defendants' request for a stay.[4] Having evaluated the whether good cause existed to support the stay, the Court concluded that it did. One of the principal bases for the Court's determination was the fact that counsel for Plaintiff had admitted that his client had not exhausted his administrative remedies, and had pointed to no law or cognizable legal argument which would ameliorate that failure,

Defendants' motion to dismiss was filed on June 4, 2018. Defs.' Mot. (ECF. No. 31). In addition to arguing that Plaintiff had failed to state a claim upon which relief could be granted, Defendants raised the affirmative defense that Plaintiff had failed to exhaust his administrative remedies because he had failed to bring a formal EEO complaint at any point. *Id.* 5-10. In support of the motion, Defendants submitted the affidavit of Richard E. Feuerstein, Manager of EEO Dispute resolutions for the Northeast Area, Region 4 ("Feuerstein Aff."), through which

---

[3] May 11, 2018 Tr. at 7:7-15 ("There was something that was so drastically wrong with the process. As a matter of fact, the grievance which was not brought within 45 days, which is the same kind of law with regard to exhaustion, that grievance was brought against him more than six months later after the time period of when the accident happened. That is not right either. So they didn't meet the 45 days in any way, shape or form; and I don't see why my client should be forced to meet an exhaustion remedy when they didn't meet that.").

[4] Despite his prior consent to the stay of discovery, counsel for Plaintiff nonetheless objected to the stay of discovery at the May 11, 2018 Tr. 10:16-11:9.

Defendants submitted the Settlement Agreement and an EEO summary "concerning an informal EEO pre-complaint initiated by Plaintiff on May 18, 2012" which demonstrates that Plaintiff's informal pre-complaint had been settled prior to ripening into a formal complaint. Feuerstein Aff. (ECF No. 32) ¶¶ 3-4; Feuerstein Aff., Ex. A, ("Pre-Complaint Summary") (ECF. No. 32-1).[5] Plaintiff opposed the motion on June 25, 2018. Pl.'s Opp. (ECF No. 34-2). Plaintiff also submitted additional documents to support his opposition, namely Plaintiff's affidavit, Pl.'s Aff, and documents related Plaintiff's employment arbitration. Pl.'s Aff., Ex A. Defendants' reply was filed on July 2, 2018. Defs.' Reply (ECF. No. 35).

Noting that both parties had relied on documents "outside the pleadings," Fed. R. Civ. Pro. 12(d), the Court scheduled a teleconference for October 25, 2018. (ECF No. 36). At that conference, the Court converted Defendants' motion to dismiss from a Federal Rule of Civil Procedure 12(b)(6) motion to a motion for summary judgment under Rule 56 to the extent that the motion related to Defendants' affirmative defense of failure to exhaust Plaintiff's administrative remedies. (ECF No. 37); *see* Fed. R. Civ. Pro. 12(d). In order to provide the parties with ample notice of the conversion and opportunity to submit supplemental arguments and documentation, the Court provided Plaintiff with two weeks to submit "additional facts and legal arguments" opposing summary judgment. (ECF No. 37). Plaintiff was further directed to submit a 56.1 statement in connection with his supplemental papers. Oct. 25, 2018 Tr. Defendants' supplemental reply papers were due two following the date on which Plaintiff's papers were filed. (ECF No. 37).

Plaintiff submitted his supplemental opposition to summary judgment on November 7, 2018. Pl.'s Supp. Opp. (ECF No. 38). Despite citing to new additional documents, such as a letter from Dr. Mark S. McMahon and a report by Dr. Mark S. Silver, Plaintiff did not submit new

---

[5] Defendant also relied on the transcript of the May 11, 2018 teleconference.

5

evidence by affidavit or otherwise, not even the letters and reports to which he cited in his opposition.  *See* Pl.'s Supp. Opp. at 4-5.  Moreover, despite arguing that additional discovery was required before the summary judgment motion could be adjudicated, Pl.'s Supp. Opp. at 8, Plaintiff did not submit an affidavit or declaration in support of that contention as required by Federal Rule of Civil Procedure 56(d).  Nor did Plaintiff submit a 56.1 statement as he was directed to do by the Court on October 25, 2018.  Oct 25, 2018 Tr.; Defs.'s Supp. Reply (ECF. No. 39) at 1 n.2.

On November 21, 2018, Defendants submitted their supplemental reply brief.  Defs.'s Supp. Reply.  Additionally, Defendants submitted the declaration of William C. Coutu, the Manager of EEO compliance and Appeals for Region 4 (Northeast and Eastern Areas) which demonstrates that Plaintiff never reported a breach of the Settlement Agreement to the EEO.  Decl. of William C. Coutu, November 8, 2018 (ECF No. 40) ("Coutu Decl.").

## II. DISCUSSION

### A. Standard for Summary Judgment

Defendants are entitled to summary judgment on their claims if they can show that "there is no genuine dispute as to any material fact and that [they are] entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To defeat a motion for summary judgment, Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice.  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations and internal quotations omitted).  Nor will wholly implausible alleged facts or bald assertions that

6

are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (citing *Matsushita*, 475 U.S. at 585-86). The issue of fact must be genuine—Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int' l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). Rather, the Court must decide "whether a rational juror could find in favor of the non-moving party." *Id.* (citing *Anderson*, 477 U.S. at 249).

### B. Summary Judgment Need Not Be Postponed to Permit Plaintiff to Take Discovery

Plaintiff cannot invoke Federal Rule of Civil Procedure 56(d) to delay entry of judgment against him. Plaintiff has argued that he should be permitted to pursue discovery prior to adjudication of the issues raised in this motion because, he argues, without discovery "counsel cannot present crucial facts to justify Plaintiff's opposition." *See, e.g.,* Pl.'s Supp. Opp at 8.

While Plaintiff's submissions never make express reference to the rule, they can be construed as applications to resist summary judgment under Federal Rule of Civil Procedure 56(d). A party resisting summary judgment on the ground that it needs additional discovery in order to defeat the motion must submit an affidavit pursuant to Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)), showing: "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Meloff v. N.Y.*

*Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995) (*quoting Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir. 1989)). "[T]he failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994). "A reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit . . . ." *Id.*

Plaintiff cannot avoid summary judgment on the basis of Rule 56(d). Plaintiff did not present the affidavit required under the rule; this alone is a sufficient basis for the Court to deny the application. Moreover, the rationale suggested by Plaintiff for the need for further discovery in his opposition is far from compelling. The issues pertinent to this motion are straightforward: principally, did Plaintiff exhaust his remedies? Plaintiff himself concedes that he did not. To the extent that Plaintiff wishes to present additional facts in support his claim for equitable tolling, the Court observes that those facts are uniquely within the control of Plaintiff, and do not appear to require party or third party discovery. As a result, Plaintiff's request to defer decision on this motion until after he has had the opportunity to develop additional facts is denied. The Court does not believe that delay in the execution of judgment is warranted under Rule 56(d).

### C. Plaintiff Failed to Exhaust His Administrative Remedies

"Title VII requires that an employment discrimination claimant pursue administrative procedures before commencing a lawsuit and imposes a deadline for the initiation of such procedures." *Fitzgerald v. Henderson*, 251 F.3d 345, 358-59 (2d. Cir. 2001) (citing U.S.C. § 2000e-16; *Briones v. Runyon*, 101 F.3d 287, 289-90 (2d Cir. 1996)). A federal employee bringing an employment discrimination claim "must first seek [informal] EEO counseling within forty-five days of the allegedly discriminatory act" and "then file [a formal] EEO complaint with the agency that allegedly discriminated against the complainant." *Boos v. Runyon*, 201 F.3d at 181 (internal quotation marks

omitted). Claims under Title VII and employment discrimination claims under the Rehabilitation Act are "barred unless the employee has exhausted available administrative remedies." *Hodges v. Attorney Gen. of U.S.*, 976 F. Supp. 2d 480, 490 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).

"Should the employee voluntarily withdraw his [agency] complaint prior to a final decision on the merits, he will be precluded from raising those claims in a subsequent discrimination action in federal court." *Economou v. Caldera*, 2-cv-12117-AJP, 2000 WL 1844773, at *16 (S.D.N.Y. Dec. 18, 2000), *aff'd* 286 F.3d 144 (2d Cir. 2002), *cert. denied*, 537 U.S. 975 (2002); *Fletcher v. Potter*, 2-cv-9385-GWG, 2004 WL 1167378, at *7 (S.D.N.Y. May 26, 2004), *aff'd sub nom. Fletcher v. Palazzo*, 151 F. App'x 73 (2d Cir. 2005). "The law favors settlement and conciliation of civil rights litigation. 'To allow claimants . . . to continue to pursue claims that have been fully remedied during the administrative process would frustrate the congressional policy favoring administrative resolution of complaints.'" *Johnson v. Frank*, 828 F. Supp. 1143, 1151 (S.D.N.Y. 1993) (quoting *Wrenn v. Secretary, Dept. of Veterans Affairs*, 918 F.2d 1073, 1078 (2d Cir. 1990)).

Plaintiff did not exhaust his administrative remedies. It is undisputed that Plaintiff's sole EEO activity consisted of an informal pre-complaint which he filed on May 12, 2012, and settled on July 17, 2012. *See* Settlement Agreement; Pre-Complaint Summary; Coutu Decl. The settled pre-complaint does not constitute a formal complaint of the type that could exhaust his administrative remedies. Plaintiff has presented no evidence that he ever filed a formal EEO complaint of any kind. Indeed, Plaintiff has conceded that he has not exhausted his remedies at the EEO. The only question is whether Plaintiff's arguments that his compliance with the statutory obligation to exhaust his remedies should be excused. For the reasons described below, the clear answer to this question is no.

### 1. Plaintiff's Counter Arguments Are Unavailing

Plaintiff presents two primary arguments as to why his failure to exhaust his administrative remedies should be excused. First, because his claims are reasonably related to the informal pre-complaint, and second, because he is entitled to equitable tolling.[6] For the reasons that follow, both arguments are denied.

Plaintiff cannot invoke the doctrine of reasonable relation because he has never exhausted his administrative remedies with respect to a claim to which he could reasonably relate back. "[C]laims arising during or after an EEOC investigation are deemed exhausted when a plaintiff seeks to join them to a timely filed lawsuit on his original, exhausted claims, because it would be burdensome and wasteful to require a plaintiff to file a new EEOC charge instead of simply permitting him to assert that related claim in ongoing proceedings to adjudicate the underlying

---

[6] At various stages of this litigation, Plaintiff has raised other arguments, all of which are inadequately briefed in this counseled matter, and, in any event, are meritless. First, Plaintiff argues that the Government should be forced to abide by a 45-day rule reciprocal to the 45-day rule imposed on employees in Title VII cases by statute and regulation. May 11, 2018 Tr. at 7:7-15. Plaintiff, however, advances no authority or legally cognizable argument that a 45-day rule, of any type, applies to the Government. Second, Plaintiff claims that issues regarding allegedly inadequate notice provided to Plaintiff in regards to his employment arbitration in May of 2013 excuse his exhaust his claims. Pl.'s Supp. Opp. at 7-8. Again, Plaintiff has not alleged, argued, or provided any authority regarding, the import of a purported violation of his union's collective bargaining agreement on this litigation, or why any such a violation would excuse his compliance with the statutory exhaustion requirements at issue here. Third, Plaintiff argues that the Court should waive the exhaustion of remedies requirement, on the basis of case law that relates to judicially imposed exhaustion requirements. Pl.'s Opp. 4-5 (citing *Beharry v. Ashcroft*, 329 F.3d 51 (2d Cir. 2003)); *but see Beharry v. Ashcroft*, 329 F.3d at 56 ("The requirement of administrative exhaustion can be either statutorily or judicially imposed. This Court has explained that the distinction between the two exhaustion requirements can be 'pivotal' because statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions.") (internal citations omitted). Plaintiff has provided the Court with no law which would extend *Beharry* to this context, where the exhaustion requirements are imposed not by the courts, but by statute and regulation. *See Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008) ("Regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") establish the applicable administrative procedures that a federal employee must exhaust prior to filing suit.") (quoting *Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001) (per curiam)). Fourth, Plaintiff argues, for the first time, in his supplemental opposition that he is entitled to relief because "Defendant (sic) breached its terms of the Settlement Agreement." Pl.'s Supp. Opp. at 10. Breach of the Settlement Agreement is not a claim for relief alleged in the Complaint, and Plaintiff may not raise it for the first time in is supplemental briefing. *See Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC*, 56 F. Supp. 3d 436, 450-51 (S.D.N.Y. 2014) ("It is axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss." (internal quotation marks omitted)). Furthermore, even if Plaintiff had formally alleged breach of the Settlement Agreement as grounds for relief in the Complaint, there is evidence that Plaintiff never initiated the procedure mandated by the Settlement Agreement in case of breach, *see Coutu Decl.*, and Plaintiff has not presented reasoned arguments to explain how any alleged brief of the Settlement Agreement would excuse his failure to exhaust his administrative remedies.

charge." *Duplan v. City of New York*, 888 F.3d 612, 624 (2d Cir. 2018). Plaintiff has never exhausted his administrative remedies as to any claim. Instead, as discussed above, Plaintiff filed an informal pre-complaint on May 18, 2012, which he settled on July 17, 2012. Pre-Complaint Summary, Settlement Agreement. The terms of the Settlement Agreement make clear that "by signing this agreement [Plaintiff] withdraws any and all pending EEO complaints and appeals" and that if Plaintiff wished to further pursue those claims, that "any alleged breach arising out of the implementation of or compliance with this settlement agreement must be reported in writing" to the EEO. Settlement Agreement. Nor is a settled EEO pre-complaint grounds to pursue a subsequent lawsuit. *Economou v. Caldera*, 2000 WL 1844773, at *16 ("Should the employee voluntarily withdraw his [agency] complaint prior to a final decision on the merits, he will be precluded from raising those claims in a subsequent discrimination action in federal court."); *Fletcher v. Potter*, 2004 WL 1167378, at *7 (S.D.N.Y. May 26, 2004); *Johnson v. Frank*, 828 F. Supp. at 1151 (S.D.N.Y. 1993). It is undisputed that Plaintiff has no other EEO activity. *See* Feuersein Decl.; Coutu Decl. In sum, Plaintiff never exhausted his remedies as to any complaint, with the corollary that Plaintiff cannot invoke the doctrine of reasonable relation, as there is no exhausted claim to which he can relate back.

Nor can Plaintiff invoke the doctrine of equitable tolling, which provides a basis for excusable delay in exhausting administrative remedies or filing suit, not a basis for bypassing the exhaustion of administrative remedies requirement entirely. "[E]quitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003) (internal quotation marks, alteration and citation omitted). Equitable tolling may be available to a plaintiff with a mental disability where the disability "prevented the plaintiff from proceeding in a timely fashion." *Taylor v. Fresh Direct*, No. 12-cv-2084-GBD-AJP, 2012 WL

11

6184033, at *1 (S.D.N.Y. 2012), *report and recommendation adopted*, 2013 WL 1897778 (S.D.N.Y. May 7, 2013). A "conclusory and vague claim [of mental impairment], without a particularized description of how [a] condition adversely affected [Plaintiff's] capacity to function generally or in relationship to the pursuit of [his] rights, is manifestly insufficient to justify any further inquiry into tolling." *See Vlad-Berindan v. LifeWorx*, Inc., 13-cv-1562-LB, 2014 WL 1682059, at *7 (E.D.N.Y. Apr. 28, 2014)) (internal quotation marks omitted).

It appears that Plaintiff has abandoned his equitable tolling arguments in his supplemental opposition. *Compare* Pl.'s Opp. *with* Pl.'s Supp. Opp. However, even if Plaintiff had presented this argument in his supplemental opposition, this argument would be unavailing. "[T]he Second Circuit has held that equitable tolling is inappropriate if the plaintiff was represented by counsel during the applicable time period." *Lynk v. Henderson*, 98-cv-2086-MGC, 2000 WL 178859, at *7 (S.D.N.Y. Feb. 15, 2000) (citing *Keyse v. California Texas Oil Corp.*, 590 F.2d 45, 47 (2d Cir.1978). Plaintiff has been represented by counsel since at least December of 2017, when the complaint was filed. Accordingly, even assuming *arguendo* that Plaintiff has a mental disability which entitled him to equitable tolling, the tolling period would have terminated when Plaintiff retained counsel. Plaintiff may have been prevented from taking the steps legally required to exhaust his remedies because of a mental disability; his counsel was not.[7]

---

[7] Even if doctrine equitable tolling did entirely excuse the failure of Plaintiff and his counsel to take steps to exhaust Plaintiff's administrative remedies, the information presented to the Court would not support that extraordinary relief. First, the Court observes that Plaintiff has not presented evidence that he suffers from a mental disability. Indeed, despite citing to the purported report of Dr. Mark S. Silver as to the nature of Plaintiff's alleged mental disability, neither that report, nor any other documentary evidence of Plaintiff's alleged disability, or its impact on Plaintiff's capacity to pursue his rights, have been submitted to the Court. In addition, the Court observes that, whatever the nature of Plaintiff's alleged disability may have been, it did not prevent Plaintiff from filing his informal pre-complaint, nor settling that complaint.

12

In sum, Plaintiff has failed to exhaust his administrative remedies, and has provided no viable basis in law or fact that would excuse his failure. Therefore, Defendants' motion for summary judgment is granted.

### III. Conclusion

For the reasons stated above, Defendants' motion for summary judgment is GRANTED in its entirety.

The Clerk of Court is directed to enter judgment for Defendants and to close this case.

SO ORDERED.

Dated: January 14, 2019  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge